## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| **THE TRAVELERS INDEMNITY COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO.: 19-271** |
| | § | |
| **CLEMONS MARKETING, LLC;** | § | |
| **MICHAEL SHAWN CLEMONS;** | § | |
| **LEAF MARINE** | § | |
| **DISTRIBUTION, LLC; &** | § | |
| **ZERO RPM, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW The Travelers Indemnify Company ("Travelers"), and files this Petition for Declaratory Judgment as follows:

1.      This action for declaratory relief is brought to determine the legal rights, duties, and status under the insurance policy described below.

## PARTIES

2.      Travelers is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

3.      Clemons Marketing, LLC, is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Orange Beach, Alabama. The sole member of Clemons Marketing, LLC is Michael Shawn Clemons, who is an adult resident and citizen of the State of Alabama.

4.      Michael Shaw Clemons is an adult resident and citizen of the State of Alabama.

5.     Leaf Marine Distribution, LLC, is a limited liability company organized and existing under the State of Wyoming, with its principal place of business in Orange Beach, Alabama. The sole member of Leaf Marine Distribution, Inc. is Michael Shawn Clemons, who is an adult resident and citizen of the State of Alabama.

6.     Zero RPM, Inc. is a corporation organized and existing under the laws of the State of Vermont, with its principal place of business in Cullman, Alabama.

## JURISDICTION AND VENUE

7.     Travelers invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332. Travelers is diverse from each defendant, and the amount in controversy exceeds $75,000.

8.     Venue in this District is proper pursuant to 28 U.S.C. Section 1391(a)(2), as a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

## FACTUAL BACKGROUND

9.     Travelers issued a Wholesalers Pac insurance policy to Zero RPM, Inc. ("Zero"), bearing policy number 680-SE122638-15-42, for the policy period June 22, 2015 to June 22, 2016 ("the Policy").

10.     On July 20, 2015, Clemons Marketing, LLC and Michael Shawn Clemons (collectively, "Clemons") filed a lawsuit in the Circuit Court of Baldwin County, Alabama against Leaf Marine, LLC and Tod Bennett (collectively, "Leaf Marine"), CV-2015-900866 ("the Underlying Lawsuit").

2

11.    On December 15, 2015, Clemons filed the First Amended Complaint in the Underlying Lawsuit, adding Zero as a party defendant.

12.    Travelers is currently defending Zero in the Underlying Lawsuit, subject to a full reservation of rights.

13.    On September 25, 2018, Clemons filed the Third Amended Complaint in the Underlying Lawsuit, adding Leaf Marine Distribution, LLC ("LMD") as an additional party plaintiff. [Exhibit "A," Third Amended Complaint].

14.    The Third Amended Complaint is the operative complaint in the Underlying Lawsuit.

15.    The Third Amended Complaint sets forth the following allegations:

a.    In August of 2014, Clemons entered an exclusive distributorship agreement with Leaf Marine for the distribution and sale of the LM-8000C, a product designed to cool outboard motor boats. [Exhibit "A" at ¶5].

b.    Leaf Marine represented that it could deliver the LM-8000C to Clemons so that Clemons could purchase units of LM-8000C in bulk to market and sell to third-party purchasers. [Exhibit "A" at ¶6].

c.    In order to market and sell the LM-8000C, Clemons formed LMD (hereinafter collectively "Clemons" unless otherwise noted). [Exhibit "A" at ¶8].

d.    Clemons paid $304,000 to Leaf Marine as part of the agreement. Clemons also purchased 100 units of the product in August 2014, and paid $153,967.20 to Leaf Marine as part of that order. [Exhibit "A" at ¶12].

e.   By May of 2015, Clemons had only received 16 of the 100 units ordered, and those 16 units suffered from bad workmanship, improper and faulty components, and defects. [Exhibit "A" at ¶13].

f.   Clemons spent over $500,000 "in time, money and effort in effectuating large customers and large orders in anticipation of the timely delivery of 100 units of good equipment free from defect." [Exhibit "A" at ¶15].

g.   Leaf Marine failed to deliver the units and failed to ensure the units were free from defects. Leaf Marine also misappropriated $304,000 for other products and uses without Clemons' knowledge or agreement. [Exhibit "A" at ¶16].

h.   Leaf Marine intentionally maxed out a line of credit with the product's manufacturer, HH Technologies, Inc. ("HHT").[1] This required Clemons to pay an additional $21,000 to retain possession of the units from HHT. [Exhibit "A" at ¶17].

i.   Leaf Marine intentionally manufactured equipment that would not work as represented, and intentionally withheld orders, while knowingly delivering faulty and defective products and/or products that did not work as represented. Leaf Marine also failed to provide the training required pursuant to the agreement. In addition, Leaf Marine sought other distributors in violation of the agreement, and failed to give Clemons the right of first refusal, as required under the agreement. [Exhibit "A" at ¶¶18-24].

_____

[1]HHT was originally a defendant in the Underlying Lawsuit, but was eventually dismissed.

4

j.      HHT and Zero represented to Clemons that they would stand behind the LM-8000C product and meet manufacturing demands to Clemons' consumers and correct known defects in the product. [Exhibit "A" at ¶25].

k.      HHT and Zero committed to Clemons to manufacture and produce the LM-8000C free from defects.  [Exhibit "A" at ¶25].

l.      In late July 2015, the defendants, including Zero, agreed to pay Clemons $154,000 as compensation for their wrongs and failures, and agreed that Zero would work and support Clemons in further development and sale of the product. [Exhibit "A" at ¶27].

m.      Based on these representations, Clemons continued to secure orders for the product, only to discover that Zero and HHT removed key components which caused the product to fail. [Exhibit "A" at ¶28].

n.      Clemons discovered that Zero decided not to honor the July 15 agreement but to breach it. [Exhibit "A" at ¶28].

o.      Zero did not inform Clemons of its intent not to honor and breach their agreement so that Clemons would continue [to] pay, invest and market the product.  [Exhibit "A" at ¶28].

p.      Zero and Leaf Marine (along with HHT) used the agreements with Clemons to gain access and interfere with Clemons' orders and customers, causing damages to Clemons in excess of $5,000,000.

q.     Clemons also discovered that Leaf Marine and Zero (along with HHT) used parts or components not designed for marine usage, causing and/or contributing to failure of the product. [Exhibit "A" at ¶30].

16.     Clemons' claims against Zero in the Underlying Lawsuit are based on the facts as set forth in the "FACTS" section of the Third Amended Complaint.  [Exhibit "A" at ¶¶33, 41, 50, 56, 62, 64, 66, 72, 82, and 89].

17.     In the Underlying Lawsuit, Clemons claims as damages "a sum of money greater than $5,000,000" along with the "value of all misappropriated money, supplies and equipment, plus punitive damages."  [Exhibit "A" at ¶¶40, 49, 55, 61, 65, 71, 81, 88, and 97].

18.     Travelers has provided a defense to Zero in the Underlying Lawsuit, subject to a full reservation of rights, since April 1, 2016.

19.     The Underlying Lawsuit is presently set for trial on August 5, 2019.

20.     The Policy's insuring agreement states, in part:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . .

b.     This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

21.     The Policy also contains exclusions, including the following:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

**k.     Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

22.     The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

23.     The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . "[l]oss of use of tangible property that is not physically injured . . .."

24.     The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25.     The Policy defines "your product" as follows:

"Your Product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

26. The Policy does not provide coverage for the claims asserted against Zero in the Underlying Lawsuit.

27. As a result, a justiciable controversy exists with regard to coverage under the Policy for the claims by Clemons against Zero.

**COUNT I**
**DECLARATORY JUDGMENT – THE POLICY DOES NOT PROVIDE COVERAGE BECAUSE CLEMONS DOES NOT SEEK DAMAGES BECAUSE OF "BODILY INJURY" OR "PROPERTY DAMAGE"**

28. Travelers re-alleges and incorporates by reference paragraphs 1-27 as if fully set forth herein.

29.     The damages that Clemons seeks in the Underlying Lawsuit are damages for economic loss.

30.     The damages that Clemons seeks in the Underlying Lawsuit are not damages because of "bodily injury."

31.     The damages that Clemons seeks in the Underlying Lawsuit are not damages because of "property damage."

32.     Because Clemons does not seek damages because of "bodily injury" or "property damage" in the Underlying Lawsuit, the Policy does not provide coverage for Zero.

33.     Travelers does not have a duty to defend or indemnify Zero in the Underlying Lawsuit.

**COUNT II**
**DECLARATORY JUDGMENT – THE POLICY DOES NOT PROVIDE COVERAGE BECAUSE THE DAMAGES CLEMONS CLAIMS ARE NOT CAUSED BY AN "OCCURRENCE"**

34.     Travelers re-alleges and incorporates by reference paragraphs 1-33 as if fully set forth herein.

35.     Clemons alleges in the Underlying Lawsuit that Zero and others engaged in an overarching scheme to interfere with Clemons' business, gain access to Clemons' customers, and convert Clemons' money, at Clemons' expense, in an effort to benefit financially.

36.     Clemons alleges in the Underlying Lawsuit that Zero never informed Clemons of its intent not to honor its agreement with Clemons and its intent to breach its agreement.

37.     Zero's actions of which Clemons complains and which form the basis of Clemons' claims in the Underlying Lawsuit are not accidents.

38.     Zero's actions of which Clemons complains and which form the basis of Clemons' claims in the Underlying Lawsuit are not an "occurrence" as defined in the Policy.

39.     The damages that Clemons seeks in the Underlying Lawsuit are not caused by an "occurrence."

40.     Because Clemons does not seek damages in the Underlying Lawsuit caused by an "occurrence," the Policy does not provide coverage for Zero.

41.     Travelers does not have a duty to defend or indemnify Zero in the Underlying Lawsuit.

## COUNT III
## DECLARATORY JUDGMENT – EXCLUSIONS TO THE POLICY EXCLUDE COVERAGE

42.     Travelers re-alleges and incorporates by reference paragraphs 1-41 as if fully set forth herein.

43.     The Policy contains the "expected or intended" exclusion set forth above.

44.     Clemons alleges in the Underlying Lawsuit that Zero and others engaged in an overarching scheme to interfere with Clemons' business, gain access to Clemons' customers, and convert Clemons' money, at Clemons' expense, in an effort to benefit financially.

45.     Clemons alleges in the Underlying Lawsuit that Zero never informed Clemons of its intent not to honor its agreement with Clemons and its intent to breach its agreement.

46.     Clemons alleges in the Underlying Lawsuit that Zero engaged in this conduct in an intentional effort to harm Clemons, and/or that Zero should have expected to harm Clemons.

47.     The damages that Clemons claims in the Underlying Lawsuit were expected or intended.

10

48.     The "expected or intended" exclusion excludes coverage for any such damages.

49.     The Policy contains the "your product" exclusion set forth above.

50.     Clemons alleges in the Underlying Lawsuit that the subject product, LM-8000C, was Zero's product.

51.     To the extent that Clemons claims damages to "your product," as defined by the Policy, including any loss of use of "your product," those damages are excluded by the "your product" exclusion of the Policy.

52.     Therefore, Travelers does not have a duty to defend or indemnify Zero for the allegations asserted against it.

WHEREFORE, PREMISES CONSIDERED, Travelers respectfully requests the following relief:

A.     That this Honorable Court will take jurisdiction of this petition;

B.     That this Honorable Court will ORDER, ADJUDGE, and DECREE that this is a proper case for declaratory relief and that there is a bona fine controversy between the parties as to their legal rights, status, and liabilities;

C.     That the process of this Honorable Court be issued to the defendants as provided by law and the rules of this Court and that the defendants be ordered to respond to this petition for declaratory judgment within the time prescribed by law or in the event of failure to do so, suffer a decree pro confesso;

D.     That, upon final hearing of this case, this Honorable Court will declare the rights, status, and legal relations of Travelers and the defendants named in this petition under the Policy;

E.      That, upon final hearing of this case, this Honorable Court will ORDER, ADJUDGE, and DECREE that no coverage is afforded to Zero under the Policy for claims brought in the Underlying Lawsuit;

F.      That, upon final hearing of this case, this Honorable Court will ORDER, ADJUDGE, and DECREE that Travelers does not have a duty to defend Zero in the Underlying Lawsuit;

G.      That, upon final hearing of this case, this Honorable Court will ORDER, ADJUDGE, and DECREE that Travelers does not have a duty to indemnify Zero with regard to the claims in the Underlying Lawsuit;

H.      That, upon final hearing of this case, this Honorable Court will ORDER, ADJUDGE, and DECREE that Travelers never owed a duty to defend Zero in the Underlying Lawsuit, and Travelers is entitled to reimbursement from Zero for any and all costs, fees, and expenses paid by Travelers in connection with the defense of Zero in the Underlying Lawsuit; and

I.      That, if Travelers is mistaken in any special relief prayed for, then it prays for such other, further, more general relief to which it may be entitled in the premises.

Respectfully submitted,

 s/Joel S. Isenberg
Joel S. Isenberg (ASB-8855-N76J)
Seth T. Hunter (ASB-8506-S76H)
Counsel for The Travelers Indemnity Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway, Suite 380
Birmingham, Alabama 35209
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
jisenberg@elylawllc.com
shunter@elylawllc.com

12

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL**

Clemons Marketing, LLC
c/o Shawn Clemons
24957 Wolf Bay Terrace
Orange Beach, Alabama 36561

Leaf Marine Distribution, LLC
c/o Shawn Clemons
22634 Canal Road
Orange Beach, Alabama 36561

Michael Shawn Clemons
24957 Wolf Bay Terrace
Orange Beach, Alabama 36561

Zero RPM, Inc.
c/o Lance D. Self
5380 Alabama Highway 69 South
Cullman, Alabama 35057

# Exhibit A



ELECTRONICALLY FILED
6/25/2018 3:05 PM
05-CV-2015-900866.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

**IN THE CIRCUIT COURT FOR  BALDWIN COUNTY, ALABAMA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **CLEMONS MARKETING, LLC, and** | ) | |
| **MICHAEL SHAWN CLEMONS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV-2015-900866** |
| | ) | |
| **LEAF MARINE, LLC, and TOD BENNETT,** | ) | **JURY TRIAL DEMANDED** |
| | ) | **AS TO ALL ISSUES SO** |
| **Defendants.** | ) | **TRIABLE** |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs Clemons Marketing, LLC (hereinafter "Clemons Marketing") and Michael

Shawn Clemons (hereinafter "Clemons") amends their Complaint to add and correctly name Leaf

Distribution, LLC as a named party plaintiff.  No further parties or causes of action are added in

the amendment. Plaintiff's Third Amended Complaint, as amended, shall hereinafter state as

follows:

**IN THE CIRCUIT COURT FOR  BALDWIN COUNTY, ALABAMA**
**CIVIL DIVISION**

| | |
|---|---|
| **CLEMONS MARKETING, LLC,** ) | |
| **MICHAEL SHAWN CLEMONS, and LEAF** ) | |
| **MARINE DISTRIBUTION, LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CASE ACTION NO. <u>CV-2015-900866</u>** |
| ) | |
| **LEAF MARINE, LLC, a limited liability** ) | |
| **company; TOD BENNETT, an individual;** ) | **<u>JURY TRIAL DEMANDED</u>** |
| **HH TECHNOLOGIES, INC., a** ) | |
| **corporation; and ZERO RPM, INC., a** ) | |
| **corporation.** ) | |
| ) | |
| **Defendants.** ) | |

<u>**COMPLAINT**</u>

Plaintiffs Michael Shawn Clemons, individually and on behalf of Clemons Marketing,

LLC, and Leaf Marine Distribution, LLC, bring the following complaint against Defendants Leaf

Marine, LLC, Tod Bennett, HH Technologies, Inc. and Zero RPM, Inc.:

1.      Michael Shawn Clemons is an individuals over the age of 19, and resides Baldwin

County, Alabama.  Michael Shawn Clemons ("Clemons") was at all times material a manager/

member of Clemons Marketing, LLC ("Clemons Marketing"), an Alabama Limited Liability

Company, with its principal place of business in Baldwin County, Alabama.  Clemons was also

at all time material the manager/member of Leaf Marine Distribution, LLC ("LM Distribution"),

a foreign limited liability company authorized to do business in Alabama, and doing business in

Baldwin County, Alabama as a trade name, division, subsidiary, agent, d/b/a, alter ego, of

Clemons and Clemons Marketing in order not to confuse customers and keep the Leaf Marine

name, and to help keep Clemons and Clemons Marketing's other affairs separate and identifiable from the Leaf Marine business. (Collectively referred to as "Plaintiffs" or "Clemons").

2.    Tod Bennett ("Bennett") is an individual over the age of 19 and a resident of Baldwin County, Alabama.  At all times material Tod Bennet was the manager/member of Leaf Marine, LLC ("Leaf Marine"), an Alabama Limited Liability Company, with its principal place of business in Baldwin County, Alabama.

3.    HH Technologies, Inc. ("HHT") is an Alabama corporation with its principal place of business being located at 1733 County Road 68, Bremen, Alabama 35033, and doing business by agent in Baldwin County, Alabama.

4.    Zero RPM, Inc. ("Zero") is an Alabama corporation with its principal place of business being located at 535 County Road 1317, Vinemont, Alabama 35179, and doing business by agent in Baldwin County, Alabama.

**FACTS**

5.    On August 27, 2014, Leaf Marine, LLC and Tod Bennet entered an Agreement for Exclusive Distributorship, Right of First Refusal, and Non-Disclosure and Confidentiality ("Agreement") the Leaf Marine Model#LM-8000C. ("See Exhibit "A").  The LM-8000C was a product that cooled an outboard motor boat with connected chiller plates powered by lithium batteries known as "PM110" or the "power module" producing 110 amps of power.  The 8000 referred to the amount of cool air volume the product could deliver, i.e. 8000 btu.

6.    Bennett represented to Clemons and Clemons Marketing that he could deliver this product in a timely manner if Clemons and Clemons Marketing could sale the product for him and Leaf Marine.  Bennett and Leaf Marine represented they had the product, but did not have customers or money.  Two very important things.  Turns out, they did not have a workable product either.

7.      Bennett and Leaf Marine knew that Clemons and Clemons Marketing had substantial contacts in the boating and retail community, sport fishing, and business community and could readily connect Bennett and Leaf Marine with valuable customers.  Bennett and Leaf Marine knew, or gained knowledge, that Clemons and Clemons Marketing also had significant cash capital to finance the manufacture of Bennett and Leaf Marine's outboard air conditioner system with attached chiller plate.

8.      In the Agreement, Bennett and Leaf Marine appointed and granted Clemons and Clemons Marketing "the exclusive and non-assignable right to sell [the LM-8000C]."  ¶1.  The distribution right was for the United States of America.  Clemons and Clemons Marketing had other business affairs, and set up Leaf Marine Distribution, LLC to help keep tract of their Leaf Marine financials.  LM Distribution was at all times a subsidiary, agent, division and alter ego of Clemons and Clemons Marketing.

9.      Bennett and Leaf Marine assisted and provided advertising representations and promotion about the capabilities of the product, its components, and how it would perform.  Clemons and Clemons Marketing reasonably relied on this information.  Bennett and Leaf Marine was also required to provide training to Clemons and Clemons Marketing's sales representatives.

10.     All parties agreed that the reasonable time for delivery of equipment was 4 to 7 weeks of the order.  Art. III, ¶ 1.  Bennett and Leaf Marine were responsible for prompt and timely shipment, and that all equipment would be free from any defects in material and workmanship.

11.     Bennett and Leaf Marine granted and gave unto Clemons and Clemons Marketing the first right of refusal to purchase an interest in the Company or its assets.  Art. IX.

12.     Based on the Agreement and promises, representations and inducements by Bennett

and Leaf Marine, Clemons and Clemons Marketing paid Bennett and Leaf Marine approximately $304,000.00.   Bennett and Leaf Marine accepted the funds to promptly deliver product and equipment free from defects.

13.     By end of August, 2014, Clemons and Clemons Marketing had ordered 100 units of equipment, and paid $153,967.20 toward the order.   By May of 2015, only 16 units had been delivered with bad workmanship, improper and faulty components, and defects.

14.      In addition to the capital contribution of $304,000.00, Clemons and Clemons marketing developed a first class website, www.leafmarine.com, at their own expense; attended numerous boat shows and conferences promoting and taking orders for the LM-8000C that was suppose to serve as an air conditioner for any outboard motor boat with chiller plates; developed and promoted brochures and other sales materials based on and approved by Leaf Marine containing material representations about the function, capabilities and specifications of the product to induce sales.

15.     Clemons and Clemons Marketing put their professional reputation on the line promoting and selling the Leaf Marine and Bennett products and equipment.  Clemons and Clemons Marketing spent more than $500,000 in time, money and effort in effectuating large customers and large orders in anticipation of the timely delivery of 100 units of good equipment free from defect.

16.     Based on information and belief Bennett and Leaf Marine misappropriated and converted the $304,000 of Clemons and Clemons Marketing's funds for other uses and products without Clemons and Clemons Marketing's knowledge or agreement.

17.     Bennett and Leaf Marine also intentionally maxed out a line of credit with the equipment's manufacturer, HHT.  Which caused HHT to hold 7 units of equipment at their facility in Alabama as lien and security for Bennett and Leaf Marine's failure to pay.  Plaintiffs had to pay

another approximate $21,000 to obtain the units for customers of Plaintiffs. Bennett and Leaf Marine also hacked into the Plaintiffs' email accounts and diverted customer communication directed to Plaintiff to Defendants, and diverted checks meant for Plaintiffs into Defendants' bank accounts.

18.     Based on the units obtained and customer complaints, Plaintiffs learned that Bennett and Leaf Marine had intentionally manufactured equipment that would not work as represented or as Leaf Marine and Bennett had represented it would.

19.     Bennett and Leaf Marine were intentionally withholding orders, knowingly delivering faulty and defective equipment and/or equipment that would not perform as represented.

20.     Through Clemons' efforts at boat shows, events and conferences, as well as very difficult in person meetings with large clients, that the equipment represented by Bennett and Leaf Marine as unique, one-of-a-kind, and patent pending type of equipment was merely one of many on the market place. Indeed, the only real difference was Clemons and Clemons Marketing's ability to package and sale the product and equipment.

21.     Bennett and Leaf Marine refused and failed to provide needed training and assistance as required by the ASTM Marine Standards.

22.     After Clemons and Clemons Marketing began bringing these issues to Bennett and Leaf Marine's attention, representatives of customers began asking Bennett and Leaf Marine questions about the feasibility of their product. Bennett and Leaf Marine could not answer some very basic engineering questions, and realized they were caught.

23.     During 2015, it was discovered that Bennett and Leaf Marine were actively seeking other Distributors in violation of the agreement, were offering shares and interest in the Company to third parties without giving Clemons and Clemons Marketing their first right of refusal.

24.     Based on information and belief, Bennett and Leaf Marine are actively seeking other manufacturers and suppliers directly to cut off Clemons and Clemons Marketing all the while using Clemons and Clemons Marketing funds, capital contributions, and connections.

25.     Despite the underlying issues with Bennett and Leaf Marine, HHT and Zero represented to Clemons and Clemons Marketing they would stand behind the product and meet the manufacturing demands to its consumers.  HHT and Zero would correct the known defects at the time and enter into the marine market utilizing Clemons and Clemons Marketing.

26.     HHT and Zero committed to Clemons and Clemons Marketing to manufacture and produce the LM-8000C model free from defects including the lithium battery (PM110 or "power module") components.

27.     In late July 2015, Defendants, including Zero and Bennett, agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and agreed that Zero would work and support Clemons in the further development and sale of the product.

28.     Based upon these representations, Clemons and Clemons Marketing continued its duty and obligations to secure orders and spend thousands of dollars promoting the LM-8000C model only to discover that HHT and Zero removed key components designed to make the units function properly which ultimately caused the units to fail.   Clemons also discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach it.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.

29.     Zero, HHT and Bennett used the alleged agreement to gain access to and interfere

with substantial orders and customers, including but not limited to Bass Pro, Nortec, HydraSport, Bahama Boats and others.  These actions cost and damaged Clemons at least in the amount of $5,000,000.00.

30.     During the course of correcting the known defects in the LM-8000C system, Clemons and Clemons Marketing also discovered that Bennett, Leaf Marine, HHT and Zero used other components not specified and/or designed for marine use which also contributing and/or caused the  system to fail.

31.     Bennett, Leaf Marine, HHT and Zero knew and/or should have known these components were not designed for marine use, and such alterations contributed and/or caused ultimate failure in the LM-8000C system including the lithium battery and/or power module and low voltage components.

32.     Bennett, Leaf Marine, HHT and Zero failed and/or refused, and continues to refuse, to honor its warranty obligation to correct these defects pursuant to its agreement with Clemons and Clemons Marketing.

## COUNT ONE - BREACH OF AGREEMENT

33.     Plaintiffs incorporate herein the allegations of all paragraphs above.

34.     As the company and person responsible for the product and equipment, the Defendants were required to devote their full time, skill and attention to the equipment and to properly, competently, honestly, efficiently, and in a workmanlike manner, administer, manage, develop, and deliver the equipment.

35.     Bennett, Leaf Marine, HHT and Zero breached those duties by failing to devote full time, skill and attention to his duties as the Company, by failing to perform in a workmanlike manner and by performing in a negligent, wanton, reckless, grossly negligent, and willfully improper manner.

Bennett and Leaf Marine misused funds, failed to provide training and support, misrepresented the equipment, components, and its capabilities, improperly sought other distributors, improperly sought to sell the company, shares and interests.

35.     In the Agreements Bennett, Leaf Marine, HHT and Zero all gave representations and warranties that as of the time of each order for equipment, unless otherwise disclosed, all equipment would be manufactured and delivered  was in accordance with the plans and specifications for the equipment and all costs for the equipment previously contributed by Clemons and Clemons Marketing had been paid and used appropriately.

36.     Bennett, Leaf Marine, HHT and Zero all breached those representations and warranties.

37.     In connection with the duties as the Company under the Agreement, and by operation of law, Bennett and Leaf Marine owed duties to Plaintiffs to properly train and assist the staff, not to seek other distributors, not to use funds for other equipment and personal items, and to properly satisfy costs for equipment, and completing and delivering the equipment in accordance with the Agreement.

38.     Bennett and Leaf Marine breached their duties by failing to properly train and assist staff, by seeking other distributors in violation of the distributorship agreement, for using funds for his own personal use or other ventures, by not paying for units and equipment ordered and due, and by failing to complete and deliver equipment free from defects.

39.     In late July 2015, Defendants, including Zero and Bennett, agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and agreed that Zero would work and support Clemons in the further development and sale of the product.  Clemons also discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach it.  Neither Zero

nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

40.     Plaintiffs claim from  Defendants a sum of money greater than $5,000,000 as damages for breach of the Agreement as alleged, including return of all contributions and monies paid, for damages incurred by Plaintiffs in repairing and returning customer's money for defective product and equipment, for all marketing and promotional expenses, damages for rework and correcting inadequate and improper equipment, damages for having to purchase equipment a second time from manufacturers due to Defendants misappropriation of funds, damages for failure to design and deliver in accordance with representations, components and plans fees,  damages for delay, damages for breach of duties, damages for cancellation of sales contracts and orders, attorney's fees and costs, and other incidental and consequential damages.

## <u>COUNT TWO - FRAUD</u>

41.     Plaintiffs incorporate herein the allegations of all paragraphs above.

42.     In the course of the initial discussions and continuing thereon, Bennett, Leaf Marine, HHT and Zero made numerous false representations about their ability and the ability of equipment to perform.

43.     Plaintiffs relied upon the false representations and entered into contractual relationships with the Defendants based on same.

44.     During the course of the projects Defendants made numerous false representations about their ability to properly perform their various duties related to the equipment, the working capital invested in Bennett and Leaf Marine, the representations contained in advertising and

promotional material, the components of the equipment, the use of funds, their intention and ability to complete and deliver the equipment within certain budgets and time-lines, the costs that had previously been incurred at certain times, their ability to complete the equipment in accordance with the plans and specifications and in a workmanlike manner free from defects, their use of funds advanced by Clemons, the use of materials and labor on the equipment, and other matters material to the successful manufacture and delivery of the equipment and distributorship agreement.

45.     Plaintiffs relied upon these representations to their detriment in allowing Defendants to continue managing and constructing the equipment, and in continuing to pay Defendants for supposedly manufacturing units ordered.

46.     Defendants fraudulently submitted bills to Plaintiffs for work supposedly to manufacture equipment and product that was in fact paid to other items and purposes.

47.     In late July 2015, Defendants, including Zero and Bennett, represented that they would pay Clemons $154,000.00 as compensation for their wrongs and failures, and agreed that Zero would work and support Clemons in the further development and sale of the product.  Clemons also discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach it.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

48.     At the time of marking the July 2015 agreement, Defendants including Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and his business.

49.     Plaintiffs claim from Defendants a sum of money greater than $5,000,000 as

damages for fraud and misrepresentations and punitive damages.

## COUNT THREE - NEGLIGENCE AND WANTONNESS

50.     Plaintiffs incorporate herein the allegations of all paragraphs above.

51.     Defendants owed duties to Plaintiffs, both individually and on behalf of Leaf Marine, HHT and Zero to properly develop and construct the equipment, manage, in a workmanlike manner, the construction of the equipment, to correctly determine and report use of funds, accurately report expenses, complete and deliver the equipment in a timely manner, construct the equipment with the proper components, and properly train and assist.

52.     In late July 2015, Defendants, including Zero and Bennett, negligently and wantonly represented and agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and that Zero would work and support Clemons in the further development and sale of the product. Clemons discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach their duty of care owed to him in a negligent and wanton manner. Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product. Defendants, including Zero and Bennett negligently and wantonly failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

53.     At the time of marking the July 2015 agreement, Defendants including Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and his business.

54.     Defendants breached those duties by performing in a negligent, wanton, reckless, grossly negligent, and willfully improper manner.

55.     Plaintiffs claim from Defendants a sum greater than $5,000,000 as damages for their

negligence, wantonness, reckless conduct, gross negligence and willfully improper conduct, including all damages incurred, and punitive damages.

## COUNT FOUR - MISAPPROPRIATION

56.     Plaintiffs incorporate herein the allegations of all paragraphs above.

57.     Defendants misappropriated money paid by Plaintiffs for equipment and units supposedly completed in a workmanlike manner, free from defects and delivered in a timely manner, and used that money for their personal benefit rather than for completion of and satisfying their obligations.

58.     In late July 2015, Defendants, including Zero and Bennett, negligently and wantonly represented and agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and that Zero would work and support Clemons in the further development and sale of the product. Clemons discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach their duty of care owed to him in a negligent and wanton manner.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett negligently and wantonly failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

59.     At the time of marking the July 2015 agreement, Defendants including Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and his business.

60.     Defendants also misappropriated supplies and equipment intended to satisfy the obligations under the Agreements.

61.     Plaintiffs claim from Defendants the value of all misappropriated money, supplies

and equipment as damages for misappropriation of funds, equipment, materials and supplies, plus punitive damages.

## COUNT FIVE - ALTER EGO AND AGENCY

62.     Plaintiffs incorporate herein the allegations of all paragraphs above.

63.     Tod Bennett, Leaf Marine, HHT, and Zero are jointly liable for the wrongful conduct and breaches as the alter egos and/or principals for each other, they acted as one and the same disregarding any corporate formalities and commingling funds, and Plaintiffs claim from all Defendants all damages.

## COUNT SIX - CONVERSION

64.     Plaintiffs incorporate herein the allegations of all paragraphs above.

65.     Plaintiffs claim from Defendants damages for the conversion of funds, materials and equipment owned by Plaintiffs or which Plaintiffs had a right to have applied to equipment and units and which were not so applied, plus punitive damages.

## COUNT SEVEN - CONSPIRACY

66.     Plaintiffs incorporate herein the allegations of all paragraphs above.

67.     From the beginning of discussions and through September 2015, Defendants engaged in a consp

68.     In late July 2015, Defendants, including HHT, Leaf Marine, Zero and Bennett, conspired and did represent and agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and that Zero would work and support Clemons in the further development and sale of the product.   Clemons discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach their duty of care owed to him in a negligent and wanton

manner.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett negligently and wantonly failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

69.    At the time of marking the July 2015 agreement, Defendants including HHT, Leaf Marine, Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and his business.

iracy among them to defraud Plaintiffs.

70.    As part of that conspiracy, Defendants:

    a.    undertook to use funds, money, material and supplies for other uses, and to falsely state that those funds, money, materials and supplies had in fact been used on the equipment and units.

    b.    took money paid for work supposedly used for equipment and used it for unrelated uses, thus causing inability of Clemons and Clemons Marketing to perform its contractual and legal duties to customers, and ultimately causing substantial financial and reputational damage.

    c.    failed to pay the bills and expenses incurred when due.

    d.    misrepresented numerous facts to Plaintiffs causing Plaintiffs to participate in the Agreement and to pay funds through April 2015.

    e.    engaged in and committed all of the breaches of contract and torts alleged above.

71.    Plaintiffs claim from Defendants a sum of money greater than $5,000,000 as damages

for the conspiracy as alleged, including return of all monies, funds, capital contributions, damages for delay, defective equipment, damages incurred by Plaintiffs in paying for equipment twice, damages for rework and correcting inadequate and improper equipment, damages for stealing and converting funds due Plaintiffs, failure to construct equipment to the plans and specifications, damages for delay,  damages for cancellation of orders, punitive damages and other incidental and consequential damages.

## **COUNT EIGHT**

## **INTERFERENCE WITH BUSINESS AND/OR CONTRACTUAL RELATIONS**

72.     Plaintiffs incorporate herein the allegations of all paragraphs above.

73.     Defendants knew, or should have known that Plaintiffs' primary income source, or a portion thereof, came from client contracts and/or sales relating to LM8000 unit and/or its components, i.e., lithium batteries.

74.     Defendants systematically engaged in a course of conduct to hinder and/or restrain Clemons and Clemons Marketing from producing a workable product to which its consumer purchased.

75.     In late July 2015, Defendants, including Zero and Bennett, negligently and wantonly represented and agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and that Zero would work and support Clemons in the further development and sale of the product. Clemons discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach their duty of care owed to him in a negligent and wanton manner.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett

negligently and wantonly failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

76.     At the time of marking the July 2015 agreement, Defendants including Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and wrongly interfere with his business.

77.     The actions of the Defendants (as described above) were designed to and intended to wrongfully disrupt the economic and/or business relationships between Clemons and Clemons Marketing's current and prospective clients.  Additionally, those actions did, in fact, disrupt Clemons and Clemons Marketing's business and economic relationships.

78.     The Defendants in interfering with Clemons and Clemons Marketing's businesses and economic relationships were intentional, willful, deliberate, and calculated to cause damage to its lawful business.

79.     The Defendants' perpetrated activities with malice, aforethought and ill will toward Clemons and Clemons Marketing.

80.     Defendants entered into and/or had a reasonable expectation that it would maintain or enter into contracts or business relationships with certain third parties who were existing Clemons/Clemons Marketing customers and/or who had communicated their interest in establishing prospective contractual relationship with Clemons and Clemons Marketing.

81.     Plaintiffs claim from Defendants a sum greater than $5,000,000 as damages for their intentional interference with business and economic relationships designed to cause damage to its lawful business, including all damages incurred, punitive damages, and for other incidental and consequential damages.

## COUNT NINE-BREACH OF WARRANTY

82.     Plaintiffs incorporate herein the allegations of all paragraphs above.

83.     Clemons and Clemons Marketing entered into an Agreement with Bennett, Leaf Marine, Zero and HHT to perform certain work in designing, manufacturing and warranting the LM-8000C system.

84.     In the performance of this work, the Defendants installed, specified, designed, manufactured, warranted and sold the LM-8000C system to the Plaintiffs.

85.     The materials installed and incorporated into the LM-8000C system by the Defendants failed to perform as represented by the Defendants.  It has been discovered that the system and materials warranted by the Defendants were not actually installed, a fact known, or which should have been known to the Defendants at, or near the time the failures were reported to the Defendants.

86.     Plaintiffs made demands to correct the known defects, and the Defendants refused and/or failed to do so.  As a direct result of the aforementioned conduct, the Defendants are in breach of its warranty.

87.     As a direct and proximate result of the Defendants' breach of warranty, Clemons and Clemons Marketing has sustained damages as aforesaid.

88.     Plaintiffs claim from Defendants a sum of money greater than $5,000,000 as damages for the breach of warranty as alleged, including return of all monies, funds, capital contributions, damages for delay, defective equipment, damages incurred by Plaintiffs in paying for equipment twice, damages for rework and correcting inadequate and improper defective equipment, damages for failure to construct equipment to the plans and specifications, damages for delay,  damages for

cancellation of orders, punitive damages and any other incidental and consequential damages to which the Plaintiffs may be entitled.

## COUNT TEN-

## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING AND BAD FAITH

89.     Plaintiffs incorporate herein the allegations of all paragraphs above.

90.     Defendants intentionally refused to perform pursuant to the terms and conditions of their Agreements.

91.     In late July 2015, Defendants, including Zero and Bennett, negligently and wantonly represented and agreed to pay Clemons $154,000.00 as compensation for their wrongs and failures, and that Zero would work and support Clemons in the further development and sale of the product. Clemons discovered that Zero and Bennett had decided not to honor their July 2015 agreement but to breach their duty of care owed to him in a negligent and wanton manner.  Neither Zero nor Bennett informed Clemons of their intent not to honor and breach their agreement so that Clemons would continue pay, invest and market the product.  Defendants, including Zero and Bennett negligently and wantonly failed and refused to pay Clemons any money, no support, no development, no further distribution or marketing.

92.     At the time of marking the July 2015 agreement, Defendants including Zero and Bennett had no intention of honoring the agreement but did it as a rouse to gather information from Clemons to harm him and his business.

93.     The Defendants knew or should have known the LM8000 unit was not manufactured in accordance with regulated ASTM standards and not delivered as specified in the product specifications and could not perform nor function for its intended use.

94.     Defendants either intentionally or recklessly failed to properly inspect the unit, investigate claims, and/or knowingly removed key components which ultimately caused the units to fail.

95.     Clemons and Clemons Marketing have been damaged by these acts and omissions of HHT and Zero.

96.     Defendants' actions in failing to perform the work of its defaulted principal amount to bad faith and a breach of the duty of implied good faith and fair dealings.

97.     Plaintiffs claim from Defendants a sum greater than $5,000,000 as damages for their breach of implied duty of good faith and fair dealing and bad faith designed to cause damage to Clemons and its lawful business, including all damages incurred, punitive damages, and for other incidental and consequential damages thereto.


Respectfully Submitted,


*s/ Adam M. Milam*
Adam M. Milam, Esq. (MIL103)
*As Counsel for Plaintiffs*

Of Counsel:

MILAM & MILAM, LLC
2206 Main Street
Daphne, Alabama 36526
T: 251-928-0191
F: 1-844-273-4029
amilam@milam-law.com


**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY AS TO ALL ISSUES SO TRIABLE.**

**By:**      *s/ Adam M. Milam*

Adam M. Milam, Esq. (MIL103)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this the 20th day of July, 2017, electronically filed the foregoing with the Court, and/or by providing a copy of same by U. S. Mail properly addressed and postage prepaid to the following:

Kathy R. Davis, Esq.                       Jeffrey W. Crabtree, Esq.
Thomas S. Creel, Esq.                 CRABTREE & SWEET, P.C.
Glenn Smith, Esq.                      Post Office Box 537
CARR ALLISON                     Daphne, AL 36526
100 Vestavia Parkway
Birmingham, AL 35216

/s/ Adam M. Milam
ADAM M. MILAM  (MIL103)